IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–03168–NYW–MDB

GENARO R. ROLDAN, and
CLAUDIA S. ROLDAN,

    Plaintiffs,

v.

NEWREZ, LLC,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Defendant's Motion to Dismiss. (["Motion"], Doc. No. 8.) Plaintiffs filed a response to the Motion to which Defendant has replied. (["Response"], Doc. No. 17; ["Reply"], Doc. No. 20.) After reviewing the briefing and relevant law, the Court **RECOMMENDS** that the Motion to Dismiss is **GRANTED**.

### SUMMARY FOR *PRO SE* PLAINTIFFS

The Court is recommending that the presiding judge grant Defendant's Motion to Dismiss because your Complaint does not include sufficient allegations or information to state a claim under the Truth in Lending Act, the Fair Debt Collection Practices Act, the State of Colorado's enacted version of the Uniform Commercial Code, or any under a theory of constructive fraud.

Specifically, claims under TILA are either time-barred or not permitted because you have not established that you have a right to rescind. Claims under the FDCPA are barred because you have not established that Defendant is a debt collector as defined by the FDCPA. Claims for constrictive fraud—to the extent you seek to bring those—fail because they are threadbare and not supported by any explanation or supporting detail. Finally, any purported UCC claims also fail because they are not supported by facts or allegations that indicate how Colorado's version of the UCC applies here.

This is only a high-level summary of the Court's Recommendation. The opinion is laid out in full below, and you should read it carefully.

## STATEMENT OF THE CASE

On May 19, 2021, Plaintiffs entered into a $353,479 loan agreement with Universal Lending Corporation to purchase property located at 1411 Rushmore Drive, Colorado Springs, CO 80910. (Doc. No. 8 at ¶ 9; Doc. No. 8 Ex 1 (Warranty Deed)); *see Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001) (noting the court may take judicial notice of public records). Plaintiffs allege they made a down payment of $15,000 on the loan and have made 15 monthly payments "of roughly $2,182." (Doc. No. 5 at ¶¶ 8, 11.) Plaintiffs signed a note and deed of trust to secure the loan. (*Id.* at ¶¶ 9–10.) On June 2, 2021, Plaintiffs received notice that Defendant would be servicing the loan. (*Id.* at ¶ 12.)

In the Complaint, Plaintiffs make several allegations:

1) Plaintiffs' down payment was "in violation of 15 [U.S.C.] § 1605";
2) "Plaintiffs were not given full disclosure in this transaction pursuant to 15 [U.S.C.] § 1601-1667j, 12 [C.F.R. §] 226.23, Truth [in] Lending Act Regulation Z";

2

3) "Plaintiffs have disputed this debt pursuant to 15 [U.S.C. §] 1692g part b";
4) "Defendant has not validated this debt as requested";
5) "Defendant has not provided Plaintiffs with a signed contract binding Plaintiffs and Defendant";
6) "Defendant has not provided Plaintiffs with the original [note] with wet ink signatures as it is the right of the Plaintiffs pursuant to [UCC] § 3-501(b)(2)";
7) "Defendant has not provided the original [note] to Plaintiffs to prove it is not in violation of UCC § 8-102";
8) "Defendant has not provided evidence to Plaintiffs that Defendant is the [h]older in [d]ue [c]ourse of the [note] as requested";
9) "Defendant has not disclosed to Plaintiffs the source of the funds that funded the [note]";
10) "Defendant has not provided Plaintiffs with an authenticated record of accounting pursuant to UCC § 9-210 as requested";
11) "Plaintiffs, as [trustors], have removed the parties and revoked [p]ower of [a]ttorney on [the] Deed of Trust";
12) "Plaintiffs have invoked their [r]ight of [r]ecission/[r]ight to [c]ancel pursuant to 12 [C.F.R.] § 226.23 for fraud";

(*Id.* at ¶¶ 8, 13, 16-23; 25-26.) In connection with these statements, Plaintiffs claim they suffered damages "in excess of $25,000," and seek an order commanding the return of their "down payment and all monthly payments made to Defendant." (*Id.* at ¶ 27, pg. 2.) Plaintiffs do not explicitly state any causes of action in their Complaint.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

3

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). "[T]he tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## II.     *Pro Se* Plaintiffs

Plaintiffs are proceeding *pro se*. The Court, therefore, "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, *pro se* litigants' "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiffs' *pro se* status does not entitle them to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## ANALYSIS

As noted above, the Complaint does not explicitly state causes of action. Plaintiffs reference provisions found in the Truth in Lending Act ["TILA"], the Fair Debt Collection Practices Act ["FDCPA"], and the Uniform Commercial Code ["UCC"] in connection with

5

certain allegations, but they do not explain the relevance of those provisions to their particular claims (assuming they have some). (Doc. No. 5 at ¶¶ 8, 13, 16, 19, 20, 23, 26); *see* 5 U.S.C. 1601 *et seq*; 15 U.S.C. §§ 1692-1692p; Colo. Rev. Stat. § 4-1-101 *et seq*[1]. Plaintiffs also appear to claim they are victims of fraud. (Doc. No. 5 at pg. 1, ¶ 26.) In light of Plaintiffs' *pro se* status, the Court attempts to discern legal claims based on statements and allegations in the Complaint, mindful however that the Court cannot "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake*, 927 F.2d at 1159 (10th Cir. 1991).

### I. Truth in Lending Act

#### a. Plaintiffs have not established a right to rescind.

Plaintiffs contend they invoked their right to rescind the loan agreement under TILA. (Doc. No. 5 at ¶ 26 (citing 12 C.F.R. § 226.23).) In the Motion, Defendant contends that Plaintiffs do not hold a rescission right on the loan in question. Defendant is correct.

"Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" *Austin v. Land Title Guarantee Co.*, No. 20-CV-03462-WJM-KMT, 2021 WL 7368175, at *8 (D. Colo. July 22, 2021), *report and recommendation adopted*, No. 20-CV-3462-WJM-KMT, 2021 WL 7368213 (D. Colo. Aug. 16, 2021) (quoting 15 U.S.C. § 1601(a)). "Section 1635 of TILA allows consumers to rescind a loan under certain circumstances." *Singh v. U.S. Bank Nat'l Assoc.*, 687 F. App'x 721, 723 (10th Cir. 2017).

---

[1] Plaintiffs cite the UCC itself, which is not legally binding. However, Colorado, like every other state in the Union, has enacted a version of the UCC. *See* Colo. Rev. Stat. § 4-1-101.

> [I]n the case of any consumer credit transaction … in which a security interest … will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction[.]

15 U.S.C. § 1635 (a). However, this provision does not apply to *all* credit transactions. Indeed, TILA explicitly exempts certain transactions, including, as relevant here, "a residential mortgage transaction," from the rescission provisions of § 1635. 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 1026 (implementing Section 1635's direction that residential mortgage transactions are excluded from the right to rescind) [2]; *Singh*, 687 F. App'x at 723 (noting that Section 1635 "subsection (e)(1) specifically exempts residential mortgage transactions"); *see* 15 U.S.C. § 1602(x) (defining a residential mortgage transaction as "a transaction in which a mortgage, deed of trust … or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition … of such dwelling").

Here, the Complaint makes clear that Plaintiffs entered into a loan agreement to purchase a home at 1411 Rushmore Drive. (Doc. No. 5 at ¶¶ 6–10.) Accepting Plaintiffs' allegations as true, and based on the text of TILA and its implementing regulations, Plaintiffs' credit transaction was a residential mortgage transaction. Hence, Plaintiffs do not hold a right to rescind the loan in question. Thus, to the extent Plaintiffs' claim for monetary damages is based on such a purported right, the Court recommends that the claim be dismissed.

  b. **Additional claims under TILA are time-barred.**

---

[2] In claiming they hold a right to rescind the loan agreement, Plaintiffs cite 12 C.F.R. § 226.23 as the implementing regulation. However, Section 226.23, also known as "Regulation Z," has been recodified as 12 C.F.R. § 1026. *See Gilbert v. Residential Funding LLC*, 678 F.3d 271, 273 (4th Cir. 2012).

7

Plaintiffs further contend that their $15,000 down payment (*id.* at ¶ 8 (citing 15 U.S.C. § 1605)) and the alleged lack of "full disclosure in this transaction"[3] (*id.* at ¶ 13 (citing 15 U.S.C. §§ 1601–67j; 12 C.F.R. § 226.23)) were violations of the TILA.

TILA's civil liability provision states: "any [TILA] action … may be brought … within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). *Cf. Littlefield v. Walt Flanagan and Co.*, 498 F.2d 1133, 1135–36 (10th Cir. 1974) (noting that a "§ 1635 rescission claim" is not barred by the one year limitation period of § 1640(e)). "A violation occurs, and the one year limitations period begins to run, 'when credit is extended through the consummation of the transaction between the creditor and its customer without the required disclosures being made.'" *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004) (quoting *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641, 646 (8th Cir. 1980). Accordingly, and to the extent Plaintiffs bring further claims under TILA, such claims are subject to a one-year statute of limitations.

Here, the loan in question was consummated on May 19, 2021. (Doc. No. 5 at ¶¶ 9 (stating that Plaintiffs signed a note for the loan on May 19, 2021)); *see Betancourt*, 344 F. Supp. 2d at 1258 (finding that the "credit transaction was completed … when the plaintiffs signed the Adjustable Rate Note"). However, Plaintiffs did not file suit in El Paso County Court until

---

[3] It is not immediately clear to the Court whether Plaintiffs contend that they were not given full disclosure that their loan was assigned to Defendant for servicing or full disclosure of the terms and rules of the loan itself.

November 10, 2022, more than one year after the credit transaction occurred.[4] Accordingly, any claim based on these additional TILA-related allegations is barred by the statute of limitations.[5]

## II. Fair Debt Collection Practices Act

Next, Plaintiffs contend they "have disputed this debt" and "Defendant has not validated this debt as requested." (Doc. No. 5 at ¶¶ 16, 17.) Seemingly in conjunction with these allegations, Plaintiffs cite "15 [U.S.C. §] 1692g part b," a provision found in the FDCPA. (*Id.*); 15 U.S.C. §§ 1692-1692p. Section 1692g(b) provides that if a consumer notifies a debt collector within a thirty-day period that the debt "is disputed … the debt collector shall cease collection of the debt … until the debt collector obtains verification of the debt or a copy of a judgment … and a copy of such verification or judgment … is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

"To establish a violation of the FDCPA, Plaintiff[s] must prove the following four elements: (1) Plaintiff[s are] … 'consumer[s]' within the meaning of 15 U.S.C. § 1692a(3); (2) The 'debt' arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5); (3) Defendant collecting the debt is a 'debt collector' within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant has violated, by act or omission, a

---

[4] To the extent any part of these allegations relate to the assignment of Plaintiffs' loan for servicing by Defendant, they are also time-barred. Plaintiffs state they received notice of the assignment on June 2, 2021. (Doc. No. 5 at ¶ 12.)

[5] Even if the TILA allegations in question were not time-barred, they would still require dismissal. The Complaint is completely devoid of any details describing how Plaintiffs' down payment violated TILA or how Defendant provided Plaintiffs with inadequate disclosure in the consummation or assignment of the loan. (*See* Doc. No. 5 at ¶¶ 8, 13); *Iqbal*, 556 U.S. at 678 (stating that a court must dismiss a complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (citation omitted)).

9

provision of the FDCPA." *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1103 (D. Colo. 2015) (citing *Duncan v. Citibank (S.D.)*, No. 06–246, 2006 WL 4063023, at *5 (D. N.M. June 30, 2006)). Defendant argues that, outside of alleging that Defendant has violated the FDCPA, Plaintiffs have not attempted to plead any other necessary elements. Defendant specifically focuses on Plaintiffs' alleged failure to establish that Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

As used in the FDCPA, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts[.]" 15 U.S.C. § 1692a(6). However, the text of the statute explicitly excludes from this definition "any person collecting or attempting to collect any debt owed or due … to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). In other words, "a creditor, mortgage servicing company, or assignee of the debt is not a 'debt collector' under the FDCPA if the entity acquired the loan before it was in default." *Llewellyn v. Allstate Home Loans, Inc.*, 795 F.Supp.2d 1210, 1231 (D. Colo. 2011) ((citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)), *partially reversed on other grounds by Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013); *see Llewellyn*, 711 F.3d at 1187 ("Because the Ocwen Defendants acquired Plaintiff's loan on May 15, 2006, when it was undisputedly current, they are not considered debt collectors under the FDCPA. Plaintiff concedes this fact."); *Sudduth v. CitiMortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 (D. Colo. 2015) (dismissing an FDCPA claim because the plaintiffs had "not alleged that they were in default when [Defendant] began servicing the note [and] [a]ccordingly, [Defendant was] not a debt collector under the FDCPA").

Here, Plaintiffs do not allege, nor is there any indication that, Plaintiffs' loan was in default when it was assigned to Defendant. Indeed, based on the timeline as alleged in the Complaint, it would seem illogical to conclude that Plaintiffs were in default at the time of the assignment—less than two weeks after Plaintiffs signed a note for the loan. (Doc. No. 5 ¶¶ 9, 12 (stating Plaintiffs signed a note on May 19, 2021, and Plaintiffs received notice of the loan's assignment on June 2, 2021).) Accordingly, without even reaching whether Plaintiffs were "consumers" who owed a "debt," Plaintiffs have not stated an FDCPA violation because they have not stated sufficient facts to establish that Defendant was a debt collector under the meaning of the FDCPA.

The Court recommends dismissing the Complaint insofar as it attempts to plead an FDCPA violation.

### III. Constructive Fraud

Plaintiffs also allege they are victims of "[c]onstructive [f]raud." (Doc. No. 5 at 1.) Plaintiffs do not provide an explanation or any supporting details for this allegation—let alone attempt to establish the elements of a constructive fraud claim in Colorado. *See Barnett v. Elite Properties of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010) ("To establish a claim for constructive fraud, a plaintiff must show (1) the existence of a duty due to a relationship between the parties; (2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.").

11

To the extent Plaintiffs claim they were victims of constructive fraud, the Court recommends dismissing this claim.

### IV.   Citations to the Uniform Commercial Code

Finally, Plaintiffs make various allegations while citing provisions of the UCC. Plaintiffs allege that Defendant has not provided them with "the original note" or the "original [note] with wet ink signatures" (citing UCC § 3-501(b)(2) & UCC § 8-102) and that Defendant has not provided "an authenticated record of accounting" (citing UCC § 9-210). (Doc. No. 5 at ¶¶ 19, 20, 23.) As noted above, the UCC itself is neither federal nor state law. *Supra* n. 1. Thus, to the extent Plaintiffs seek to bring UCC-related claims, such claims must be found in Colorado's enacted version of the UCC and must create a private right of action. *See Sigler v. Doe*, No. 10-CV-01794-LTB-BNB, 2011 WL 4829659, at *2 (D. Colo. Sept. 22, 2011), *report and recommendation adopted*, No. 10-CV-01794-LTB-BNB, 2011 WL 4829482 (D. Colo. Oct. 12, 2011).

First, UCC § 8-102 is codified in Colorado at section 4-8-102. This section merely provides definitions for terms used in Article 8 of Colorado's enacted version of the UCC and does not create a cause of action.

Next, UCC § 9-210 is codified in Colorado at section 4-9-210. With regard to an authenticated record of accounting, this section provides:

> [A] secured party, other than a buyer of accounts, chattel paper, payment intangibles, or promissory notes or a consignor, shall comply with a request within fourteen days after receipt: (1) In the case of a request for an accounting, by authenticating and sending to the debtor an accounting.

12

C.R.S. § 9-210(b)(1).[6] However, to the extent this section even applies to Plaintiffs' credit transaction and claim for monetary damages—and Plaintiffs do not provide any basis for concluding that it does—there is no indication that it creates a private right of action. *See Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1056 (D. Colo. 2013) ("C.R.S. § 4–9–210 does not appear to create a private right of action. Instead, it allows a debtor to obtain from a secured party information about the secured obligation and the collateral in which the secured party may claim a security interest.").

Finally, UCC § 3-501 is codified in Colorado at section 4-3-501. This section provides:

> "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.
>
> \*\*\*
>
> Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

C.R.S. § 4-3-501(a)–(b)(2); *see* § 83:21. Presentment, 2A Colo. Prac., Methods Of Practice § 83:21 (7th ed.) ("Presentment is a demand for payment made by a person entitled to enforce an instrument on any payor .… [T]he party to whom presentment is made may insist on production of the instrument as well as reasonable identification of the holder and evidence of his authority."). But the allegations in the Complaint do not establish that this section applies under

---

[6] Since the filing of the Complaint, this provision was amended by the Colorado General Assembly. *See* 2023 Colo. Legis. Serv. Ch. 136 (S.B. 23-090). The amended version of section 9-210(b)(1) is yet to take effect. *See id.*

these circumstances. Though Plaintiffs complain that they have not received a copy of the original note with wet ink signatures, Plaintiffs do not allege that Defendant demanded presentment from them and then failed to produce the necessary documents in response to Plaintiffs' demand for them.[7] (*See* Doc. No. 5 at ¶¶ 19, 20.)

Accordingly, to the extent Plaintiffs' claim for monetary damages is based on their citations to the UCC, the Court recommends dismissing that claim as well.[8]

## CONCLUSION

Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. No. 8) be **GRANTED.**

Court further **RECOMMENDS** that Plaintiffs' claims brought pursuant to the Truth in Lending Act and Fair Debt Collection Practices Act be **DISMISSED with prejudice** and Plaintiffs' claims brought pursuant to Colorado's enacted version of the Uniform Commercial Code and claim for constructive fraud be **DISMISSED without prejudice**.

---

[7] Further, even assuming, *arguendo*, a private right of action exists under this section—an assumption for which the Court has not uncovered any evidence—a copy of the signed note in question attached to Plaintiffs' Complaint as an exhibit, explicitly waives the rights of presentment (Doc. No. 5 at pg. 36 ("I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.")); *see* § 83:21. Presentment, 2A Colo. Prac., Methods Of Practice § 83:21 (7th ed.) ("The requirements of presentment apply only if they are not excused. An express waiver is the most common form of excuse. Most notes include waiver clauses.").

[8] In their Response, Plaintiffs also appear to tie their UCC citations to a claim for constructive fraud. In the section addressing their constructive fraud claim, Plaintiffs say that they "pray [the Court] will consider … U.C.C. § 3-501(b)(2), U.C.C. § 8-102 and U.C.C. § 9-210." (Doc. No. 17 at 4.) However, Plaintiff does not offer any explanation as to how those UCC provisions apply to the elements of constructive fraud in Colorado. *See Barnett*, 252 P.3d at 24.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of July, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge